# In the United States Court of Federal Claims

UNREPORTED
No. 14-40C
(Filed: April 8, 2014)*
*Opinion originally filed under seal on March 27, 2014

| | |
|---|---|
| BANNUM, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Bid Protest; Lack of Standing; Failure |
| v. ) | to Submit a Responsive Bid; Prison |
| ) | Rape Elimination Act, 42 U.S.C. § |
| THE UNITED STATES, ) | 15602 |
| ) | |
| Defendant. ) | |
| ) | |

*Joseph A. Camardo, Jr.*, Auburn, NY, for plaintiff.

*Antonia Ramos Soares*, United States Department of Justice, Commercial Litigation Branch, Washington, DC, with whom were *Stuart F. Delery*, Assistant Attorney General, *Bryant G. Snee*, Acting Director, and *Marian E. Sullivan*, Assistant Director. *William Robinson* and *Seth M. Bogin*, Office of General Counsel, United States Department of Justice, Federal Bureau of Prisons, of counsel.

**O P I N I O N**

**FIRESTONE**, *Judge*.

In this post-award bid protest case, plaintiff Bannum, Inc. ("Bannum") challenges the decision by the United States Department of Justice, Federal Bureau of Prisons ("BOP") to award Contract No. DJB200164 ("Contract") to Alston Wilkes Society, Inc. ("AWS"). Plaintiff argues that the $6,364,675 award should be set aside for three reasons. First, plaintiff alleges that AWS misrepresented its ability to carry out the

responsibilities of the Contract. Second, plaintiff alleges that BOP failed to document its justification for awarding the contract to a lower-rated bidder. Third, plaintiff alleges that the solicitation was materially defective because it lacked information necessary for offerors to fully understand the requirements of the Contract.

Pending before the court are the parties' cross-motions for judgment on the administrative record under Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC") and defendant the United States' ("the government") motion to dismiss under RCFC 12(b)(1) for lack of subject-matter jurisdiction. For the reasons discussed below, the court **GRANTS** the government's motion to dismiss.[1]

## I.   STATEMENT OF FACTS[2]

### a.   The Solicitation

On September 11, 2012, BOP issued Request for Proposals No. RFP-200-1182-SE ("RFP"), seeking proposals for a contractor to provide Residential Reentry Center ("RRC") services for the area within a 10-mile radius of the United States Federal Courthouse in Florence, South Carolina. AR 88. The awardee would provide various services to assist federal offenders in their transition from prison to the community. AR 140. The RFP stated that BOP would award a firm-fixed-price, indefinite delivery contract for a one-year base period with four one-year options, and reserved the right to make the award without discussions. AR 94-95.

---

[1] Accordingly, the parties' cross-motions for judgment on the administrative record are **DENIED** as moot.

[2] Unless stated otherwise, these facts are undisputed and are taken from the complaint, the parties' briefs, and the administrative record.

The RFP stated that the award was to be made on a best value basis following an evaluation of three areas: past performance, technical/management, and price.  AR 122, 129.  The RFP further stated that past performance was more important than technical/management, while the two non-price factors combined were significantly more important than price.  AR 129.  BOP received timely proposals from Bannum, AR 553-795, and AWS, AR 338-552, after which it conducted three rounds of discussions.

  **b. Discussions**

    **i. Notice #1**

On February 27, 2013, BOP issued Discussion Notice #1, seeking, among other things, to determine whether any ordinances or codes would preclude the offerors from housing sex offenders.  AR 796-801.  On March 12, 2013, AWS provided a response, stating that it would be able to house sex offenders due to its interpretation of an exception in South Carolina law, S.C. Code § 23-3-535(c)(6).  AR 802.  On March 13, 2013, Bannum provided a response, stating that it would not be able to house sex offenders in its proposed location because it was within 1000 feet of at least one children's recreational facility.  AR 836.  Bannum further stated that this item should not be evaluated as a weakness or deficiency because its initial proposal met the solicitation requirement.  Id.

    **ii. Notice #2**

On March 14, 2013, BOP issued Discussion Notice #2, applying Amendment 004 to the solicitation and updating a FAR provision.  AR 863-66.  Amendment 004 required the offerors to incorporate the requirements of the Prison Rape Elimination Act, 42

U.S.C. § 15602 ("PREA"), into their proposals.  Id.  The amendment provided the following:

> [PREA] seeks to eliminate sexual assaults and sexual misconduct of offenders in correctional facilities to include all community based facilities. Administration must maintain a zero-tolerance for sexual abuse, specific policy that addresses PREA compliance will be maintained by contractor. Facility must be in full compliance with PREA standards that apply to Community Refinement Facilities.  Compliance with standards will be measured by use of assessment tools such as Published by the National Prison Rape Elimination Commission, "Standards for the Prevention, detection, response, and monitoring of sexual abuse in Community Corrections", www.ncirs.gov/pdffiles1/226683.pdf, subsequent revisions, or any other monitoring tool as adopted by the BOP.  PREA coordinator must be designated in writing and submitted to the BOP.

AR 865-66.  On March 14, 2013, AWS provided an executed acknowledgment of Amendment 004.

On March 18, 2013, Bannum provided a response.  While providing an executed acknowledgement of Amendment 004, Bannum stated that it had "very serious concerns and numerous questions" regarding Amendment 004.  AR 870-74.  Among other concerns, Bannum stated that the Department of Justice had not yet developed a tool to assess compliance with PREA requirements, making it impossible for an offeror to properly assess the impact of those requirements on the terms of the solicitation and resulting contract.  Id.  Bannum requested that additional discussions be conducted to address these concerns and clarify the requirements.  Id.

### iii.  Notice #3

On March 28, 2013, BOP issued Discussion Notice #3 to Bannum, asking it to re-assess its ability to house sex offenders in light of the provision raised by AWS in its

response to Discussion Notice #1.  AR 880.  On April 11, 2013, Bannum provided a response, stating that, if BOP's interpretation of the provision were correct, it would be able to house sex offenders.  AR 889.  However, Bannum stated its reservations that RRCs fell within the definition of a "community care facility" as described in the statute.  AR 889-90.

### c. Request for Final Proposal Revisions

On May 3, 2013, BOP requested Final Proposal Revisions ("FPR") from Bannum and AWS.  AR 1892-95.  In its request to Bannum, BOP addressed PREA, stating that "[PREA] has been Public law since 2003 and all contractors must be in full compliance with the law."  AR 1892.  BOP further stated that it would "disseminate any and all information to contractors when it becomes available."  Id.  In its May 16, 2013 response to the request, Bannum responded with reduced pricing along with the following footnote:

> However, these prices do not, and cannot, reflect any consideration for the effects of Amendment 004 that BOP presented with this FPR request.  As is discussed elsewhere in this response to the FPR, it is not remotely possible to begin to attempt to formulate a cost or price proposal for the addition of PREA and its requirements at this point in time and with the limited amount of information we have been given, not to mention the lack of any technical guidance on this new requirement.  Accordingly, an enormous amount of information is required prior to pricing this new contract requirement which itself may require untold amounts of extra work time, services, efforts, and perhaps the necessity for consultants, auditors, not to mention additional executive and management level staffing and effort.  Bannum hereby requests that discussions continue on this requirement and that we be provided an[] adequate opportunity to respond to the new requirement and to amend our proposal as needed.

AR 1896.  AWS ███████████████.  AR 1928.

On July 1, 2013, BOP requested a second FPR from Bannum and AWS in order to reflect an updated Department of Labor wage rate determination. AR 1948-51. In response, Bannum did not revise its pricing and reiterated its footnote from the previous revision verbatim. AR 1952. AWS revised its pricing. AR 1959-78.

### d. Evaluation of Proposals and Award

On August 8, 2013, BOP issued its source selection decision, in which it identified AWS as the best value to the government. AR 1123-57. Bannum received notice of the award on August 13, 2013. AR 1192. The offerors' final proposals were evaluated as follows:

|  | Bannum | AWS |
|---|---|---|
| Past Performance | Very Good | Acceptable |
| Technical/Management | Acceptable | Very Good |
| 1. Site Location | Acceptable | Very Good |
| 2. Accountability | Very Good | Very Good |
| 3. Programs | Acceptable | Very Good |
| 4. Facility | Acceptable | Acceptable |
| 5. Personnel | Very Good | Very Good |
| Price | $6,380,808 | $6,364,675 |

AR 1123-57. On August 13, 2013, Bannum also filed a request for post-award debriefing. AR 1193-94. BOP provided a response to this request on August 15, 2013. AR 1196-97.

### e. GAO Protest

On August 20, 2013, Bannum filed a protest before the Government Accountability Office ("GAO"). AR 1200. The protest was limited to the reasonableness of BOP's evaluation of Bannum's technical proposal and the

6

reasonableness of BOP's tradeoff between the price and technical/management categories. AR 2083-86. On November 21, 2013, the GAO denied Bannum's protest. Id. On January 16, 2014, Bannum filed the present case.

## II.  STANDARD OF REVIEW

In a motion to dismiss under RCFC 12(b)(1), it is well-established that the burden is on the plaintiff to prove jurisdiction by a preponderance of the evidence. See Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). In such a motion, "the allegations stated in the complaint are taken as true . . . ." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (quoting Shearin v. United States, 992 F.2d 1195, 1195-96 (Fed. Cir. 1993)). However, the court may look beyond the pleadings and "inquire into jurisdictional facts" to determine whether jurisdiction exists. Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991). If the Court finds that it lacks subject-matter jurisdiction, it must dismiss the complaint. See Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006).

## III.  DISCUSSION

Under the Tucker Act, this court has jurisdiction "to render judgment on an action by an interested party objecting to . . . the award of a contract." 28 U.S.C. § 1491(b)(1). Jurisdiction is a threshold element, and the court may not proceed if it determines that it lacks jurisdiction. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). Thus, in order to bring such a claim, a plaintiff must be an "interested party." Orion Tech., Inc. v. United States, 704 F.3d 1344, 1348 (Fed. Cir. 2013) (citing Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006)). Establishing jurisdiction

requires a showing by the plaintiff that it is an actual or prospective bidder and that it has a direct economic interest.  Id.  In order "to prove the existence of a direct economic interest, a party must show that it had a 'substantial chance' of winning the contract."  Id.

The government argues that Bannum did not have a substantial chance of winning the contract because Bannum's proposal was nonresponsive to the terms of the solicitation.  According to the government, Bannum (1) failed to offer firm-fixed prices in response to Amendment 004 and (2) conditioned its proposal on future price adjustments.  In response, plaintiff argues that its bid was not conditional, as BOP stated in its source selection decision that the offers received, including Bannum's, were all "determined to be technically acceptable."  AR 1123.  Bannum further argues that the status of the solicitation as a negotiated procurement means that its alleged failure to comply did not require BOP to exclude its proposal, but rather provided a basis for further discussions.

The court agrees with the government.  The RFP requested offerors to provide firm-fixed prices.  The Federal Acquisition Regulations ("FAR") define a firm-fixed-price contract as providing "for a price that is not subject to any adjustment on the basis of the contractor's cost experience in performing the contract."  48 U.S.C. § 16.202-1. Bannum, however, made an offer that was conditional on the costs of compliance with PREA.  Bannum itself recognized this, stating in its final proposal that "these prices do not, and cannot, reflect any consideration for the effects of Amendment 004 that BOP presented with this FPR request."  AR 1896.  In order "[t]o be acceptable, a proposal must represent an offer to provide the exact thing called for in the request for proposals . .

8

. ." Centech Group, Inc. v. United States, 554 F.3d 1029, 1037-38 (Fed. Cir. 2009) (citing E.W. Bliss Co. v. United States, 77 F.3d 445, 448 (Fed. Cir. 1996)). Where the RFP requires a firm-fixed price, a responsive offer must provide a firm-fixed price. Fire-Trol Holdings, LLC v. United States, 68 Fed. Cl. 281, 286 (2005), aff'd 205 F. App'x 834 (Fed. Cir. 2006). Because Bannum did not provide a firm-fixed price, its offer failed to satisfy the definition requirements of a firm-fixed-price contract under the FAR and was nonresponsive to the RFP.

Bannum argues that it has standing here as an actual or prospective bidder despite the fact that it did not offer a firm-fixed price because BOP did not provide sufficient information to determine a price.[3] However, the Federal Circuit has stated that "[a] nonresponsive bidder is the epitome of one who lacks a direct economic interest." United

---

[3] Although the court does not reach the issue, Bannum's argument raises significant questions about the application of Blue & Gold Fleet L.P. v. United States, 492 F.3d 1308 (Fed. Cir. 2007). Bannum argues that its bid was necessarily nonresponsive due to a material defect in the RFP. However, there is no indication that Bannum brought a pre-award protest regarding this alleged defect with the agency or at the Government Accountability Office. The test articulated in Blue & Gold is designed for situations such as this, where offerors are aware of a potential defect but do not bring a protest. COMINT Sys. Corp. v. United States, 700 F.3d 1377 (Fed. Cir. 2012) ("But, assuming that there is adequate time in which to do so, a disappointed bidder must bring a challenge to a solicitation containing a patent error or ambiguity prior to the award of the contract."). While Bannum raised objections with BOP, it chose to continue to participate in the process rather than raising a formal protest as set forth in BOP's procurement guidelines. Further, it is not clear that Bannum's objections were sufficient to constitute a protest for the purposes of Blue & Gold. The standard requires that concerned bidders bring an actual challenge to the solicitation, whereas Bannum appears only to have raised an objection and asked for further discussions. BOP regulations include a procedure for protests, providing that "[p]rotestors have the option of protesting to the Contracting Officer or to the Agency Protest Official (APO). BOP's APO is the Chief, AMS, Acquisitions Branch." Bureau of Prisons Acquisition Policy § 33.103-70(a), available at http://www.bop.gov/policy/progstat/4100_004.pdf (last visited March 20, 2014). This policy provides procedures for pre-award and post-award protests, both with BOP and in GAO. Id. at § 33.103-70 to 33.104. While Bannum did state an objection in its correspondence with BOP, it does not appear to have filed a protest within the meaning of the subject agency regulations.

States v. Int'l Bus. Machs., 892 F.2d 1006, 1012 (Fed. Cir. 1989).  Under this standard, Bannum, as a nonresponsive bidder, lacks a direct economic interest and, along with it, standing to bring a protest in this court.[4]

Additionally, Bannum seeks to place a burden on BOP to inform bidders of potentially-nonresponsive bids, arguing that it did its best to comply with the terms of the RFP in light of the lack of additional information from BOP.  According to Bannum, because a bid was submitted and considered by BOP, BOP cannot now say that the bid is nonresponsive.  The government argues that this is contrary to the definition of a firm-fixed-price contract, which places the risk on bidders to provide a price based on the information available to them.  The court finds Bannum's burden-shifting argument to be without merit.  A nonresponsive bid remains a nonresponsive bid, regardless of the government's behavior towards it.  A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126 (2006) ("A nonresponsive bid, made nonresponsive by a defective bid bond, denies standing to a protestor, regardless of the protestor's prior ranking in a competition for a contract award.  [The plaintiff] cannot excuse its failure to properly submit a bid bond by the agency's lack of diligence in removing a nonresponsive bid from consideration." (citation omitted)).  Further, BOP was under no obligation to participate in the sort of discussions that Bannum argues were required in response to its objections, as the RFP stated that "[t]he Government reserves the right to award the contract without

---

[4] At oral argument, Bannum noted that BOP has since appeared to correct its guidelines to account for the discrepancy between its internal procedures and the requirements of PREA that caused Bannum to seek additional information.  However, this fact has no bearing on the present case, as the updated policy was not, and indeed could not have been, incorporated into the RFP.

discussions.  Therefore, all proposals should be prepared as your organizations [sic] final proposal." AR 88.

This decision is also consistent with the recent decision from this court in <u>Bannum v. United States</u>, No. 14-140 (Mar. 12, 2014).  In that case, Bannum brought a protest of a contract award for RRC services in a different location.  With some exceptions, Bannum's final price proposal was similar to the proposal in this case, with Bannum refusing to provide a firm-fixed price due to uncertainty about compliance with PREA.  Judge Williams, in that case, found that Bannum had not provided a bid that conformed to the terms of the solicitation, and as a result held that Bannum lacked standing.  The court finds the analysis in that decision to be persuasive and sees no reason to deviate from it here.

## IV.   CONCLUSION

Because Bannum lacks standing, this court lacks subject matter jurisdiction and must dismiss the complaint.  Accordingly, the government's motion to dismiss is **GRANTED**.  The clerk is directed to enter judgment accordingly.   Each party shall bear its own costs.

**IT IS SO ORDERED.**

s/Nancy B. Firestone  
NANCY B. FIRESTONE  
Judge